1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

KEITH CURRIE,

                           Plaintiff,

    v.

ROBERT BANNISTER, *et al.,*

                        Defendants.

3:14-cv-00501-RCJ-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

       This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.  Before the court is defendants' motion to dismiss or for summary judgment (ECF Nos. 52, 53 (sealed)).  Plaintiff opposed (ECF No. 55), and defendants replied (ECF No. 56).  For the reasons stated below, the court recommends that defendants' motion for summary judgment (ECF No. 52) be denied.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

       Keith Currie ("plaintiff") is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and currently housed at Northern Nevada Correctional Center ("NNCC") in Carson City, Nevada.  Pursuant to 42 U.S.C. § 1983, plaintiff brings a civil rights claim against NNCC officials.

       For background, plaintiff is a partial paraplegic with a partially severed spinal cord.  (ECF No. 7 at 3.)  He has limited movement of his hips and thighs and has full paralysis from the knees down.  (*Id.*)  Plaintiff is confined to a wheelchair and is housed in NNCC's Medical Intensive Care ("MIC") unit.  (*Id.*)

       According to plaintiff's complaint (ECF No. 7), the alleged events giving rise to his claim are as follows.  In August 2012, plaintiff requested a cushion for his wheelchair and an extra mattress or air mattress to help prevent decubitus ulcers.  (*Id.* at 5.)  Plaintiff personally requested

these medical devices from defendant Dr. Gedney.[1]  (*Id.*)  Plaintiff asserts he was denied these devices and as a result developed a severe and painful decubitus ulcer on his buttock.  (*Id.*)

On August 16, 2012, plaintiff went to sick call at NNCC's infirmary for treatment of a returning ulcer on his buttocks adjacent to his anus that caused pain and expelled an odor.  (*Id.*) The nurses applied a wet-to-dry dressing and gave plaintiff medical supplies to change his own dressing three times a day.  (*Id.*)

On August 17, 2012, defendants, Dr. Gedney and Van Horn, examined plaintiff.  (*Id.*) Defendants acknowledged that plaintiff's wound was "worsening" and that it had a foul smell with drainage indicating that the ulcer was infected.  (*Id.* at 6.)  Defendants applied another wet-to-dry dressing, but did not prescribe antibiotics.  (*Id.*)

On August 29, 2012, defendants again examined plaintiff and "reversed their assessment of Plaintiff's ulcer as 'superficial.'"  (*Id.*)  Plaintiff informed Dr. Gedney that he was in pain and he believed the ulcer was "tunneling" as a result of the infection.  (*Id.*)  Plaintiff pleaded with Dr. Gedney to order him a new wheelchair cushion and an extra mattress to prevent his ulcer from worsening.  (*Id.*)  Dr. Gedney told plaintiff that the Utilization Review Panel ("UR Panel") would not approve or pay for these medical devices and that plaintiff would have to rotate more to prevent more ulcer wounds.  (*Id.*)  Defendants gave plaintiff another wet-to-dry dressing and did not order antibiotics.  (*Id.*)

On September 4, 2012, plaintiff was reexamined at the infirmary after he discovered that his ulcer was severely infected causing a tunnel to appear in the ulcer itself.  (*Id.*)  Plaintiff went to the MIC unit where Nurse Brenda confirmed that plaintiff's ulcer had an infected tunnel.  (*Id.*) Plaintiff was sent to the infirmary where Van Horn examined plaintiff and also acknowledged that his ulcer was infected and tunneling.  (*Id.*)  Van Horn ordered oral antibiotics and recommended a consult approval for an air mattress and wheelchair cushion from the UR Panel.  (*Id.*)  Dr. Gedney was on the UR Panel.  (*Id.* at 6-7.)

---

[1] Plaintiff's complaint also discusses Robert Bannister, who has since been dismissed as a defendant from this lawsuit.  (*See* ECF No. 6 at 9.)  Because he is no longer a party to this action, all references to him will be omitted.

On September 5, 2012, plaintiff was put under defendants' care in the MIC unit. (*Id.* at 7.) On September 12, 2012, plaintiff was put on another oral antibiotic after it was discovered that his tunneling ulcer had obtained a staph infection. (*Id.*) The medical staff learned of the infection after taking a culture on September 4, 2012. (*Id.*) Defendants knew of the staph infection on September 9, 2012, but waited three days to put plaintiff on oral antibiotics, which had no effect on the staph infection. (*Id.*) Plaintiff asserts that he should have been put on intravenous antibiotics to combat the staph infection. (*Id.*)

From September 12, 2012 through December 5, 2012, defendants knew that plaintiff had contracted a staph infection as a result of his ulcer tunneling itself four centimeters into his buttocks. (*Id.*) While defendants acknowledged plaintiff's constant, searing pain in his leg and scrotum, they deliberately chose a less effective alternative method of treatment of wet-to-dry dressings and non-effective oral antibiotics. (*Id.*)

Defendants waited until plaintiff's condition worsened before they scheduled him a consult with orthopedic surgeon, Dr. King. (*Id.* at 8.) On December 12, 2012, Dr. King recommended that plaintiff receive immediate orthopedic surgery for the life-threatening ulcer. (*Id.*) On January 27, 2013, plaintiff was taken to Renown Medical Center ("Renown") for surgery. (*Id.*)

At Renown, Dr. Wrye operated on plaintiff and performed an excision of plaintiff's pressure sore. (*Id.*) Dr. Wrye found that plaintiff had suffered a soft-bone injury in his thigh. (*Id.*) Dr. Wyre took a sample and sent it the Infectious Disease Department for testing. (*Id.*) Dr. Yee of the Infectious Disease Department found that plaintiff had contracted a staph infection more than three months prior. (*Id.*) The doctors gave plaintiff six weeks of IV antibiotics, told plaintiff that he needed a specialty bed to offload pressure to his sacral area, and told him he needed to remain flat of a number of weeks. (*Id.*) Plaintiff stayed at Renown for nine days. (*Id.*)

On February 4, 2013, plaintiff returned to NNCC's infirmary where he received IV antibiotics and morphine for pain through a PIC line. (*Id.* at 8-9.) Plaintiff also wore fentanyl patches and took oxycodone for the pain. (*Id.* at 9.) Plaintiff remained on IV antibiotics from

February 4, 2013 through April 2, 2013.  (*Id.*)  On May 17, 2013, prison officials discharged plaintiff to the MIC unit and gave him two state bed mattresses until his air mattress arrived.  (*Id.*)

On July 9, 2013, plaintiff saw Dr. King again.  (*Id.*)  Dr. King recommended that plaintiff return in another two to three weeks for possible pain injections.  (*Id.*)  However, prison officials never followed up with this recommendation and did not refer plaintiff back to Dr. King despite plaintiff's complaints of chronic pain.  (*Id.*)  On August 23, 2013, plaintiff received an air mattress to help prevent re-occurring pressure sores.  (*Id.*)  Plaintiff continues to suffer from extreme chronic pain in his thighbone and scrotum.  (*Id.*)

On February 11, 2015, the District Court entered a screening order pursuant to 28 U.S.C. § 1915, allowing plaintiff to proceed with his Eighth Amendment deliberate indifference claim against defendants Dr. Gedney and Van Horn.  (ECF No. 6 at 7.)

On July 18, 2016, defendants filed their motion for summary judgment asserting that plaintiff failed to state a claim as a matter of law, or more specifically, that plaintiff cannot prove defendants disregarded his medical condition.  (ECF No. 52 at 6-9.)

## II.    LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" only where a reasonable jury could find for the nonmoving party.  *Id.*  Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this stage,

1    the court's role is to verify that reasonable minds could differ when interpreting the record; the

2    court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d

3    1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

4         Summary judgment proceeds in burden-shifting steps. A moving party who does not bear

5    the burden of proof at trial "must either produce evidence negating an essential element of the

6    nonmoving party's claim or defense or show that the nonmoving party does not have enough

7    evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos*.,

8    210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis

9    of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in

10   favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank

11   of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any

12   inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v.

13   Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

14        Where the moving party meets its burden, the burden shifts to the nonmoving party to

15   "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle

16   Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light

17   one," and requires the nonmoving party to "show more than the mere existence of a scintilla of

18   evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury

19   could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The

20   nonmoving party may defeat the summary judgment motion only by setting forth specific facts

21   that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248;

22   *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence,

23   Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the

24   material facts" will not defeat a properly-supported and meritorious summary judgment motion,

25   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

26        For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant

27   in motions and pleadings are admissible to the extent that the contents are based on personal

28

1  knowledge and set forth facts that would be admissible into evidence and the litigant attested under

2  penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir.

3  2004).

4                                                      **III.     DISCUSSION**

5  **A.     Civil Rights Claims Under § 1983**

6                  42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to

7  deprive individuals of their federally guaranteed rights."  *Anderson v. Warner*, 451 F.3d 1063,

8  1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)).  The statute

9  "provides a federal cause of action against any person who, acting under color of state law,

10 deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore

11 "serves as the procedural device for enforcing substantive provisions of the Constitution and

12 federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Claims under § 1983

13 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official

14 acting under the color of state law.  *Warner*, 451 F.3d at 1067.  Further, to prevail on a § 1983

15 claim, the plaintiff must establish each of the elements required to prove an infringement of the

16 underlying constitutional or statutory right.

17 **B.     Preliminary Matters**

18               Plaintiff's opposition raises some concerns about defendants' motion.  First, it is somewhat

19 unclear which defendants the motion is brought on behalf of, and second, the entirety of

20 defendants' motion is based on unauthenticated medical records.  (*See* ECF No. 55 at 2-3, 9-10.)

21 Each issue will be addressed in turn.

22                    **1.     Represented Defendants**

23               Plaintiff first argues that it is unclear if defendants are bringing their motion on behalf of

24 defendant Van Horn because a footnote in defendants' motion states she is not represented by the

25 Attorney General's Office.  (*Id.* at 2.)  Plaintiff requests a default judgment be entered if it is

26 determined that the motion is not brought on her behalf.  (*Id.* at 3.)

27

28

Defendants' reply that this is a "non-issue," that the footnote was erroneously left in their motion, and the Attorney General's Office does represent Van Horn as evidenced by its' previously filed Joinder to the Motion to Dismiss (ECF No. 35). (*See* ECF No. 56 at 1-2.)

While the court ultimately finds that the motion is brought on behalf of both defendants, it does not categorize this as a "non-issue." It is proper motion practice to bring a motion on behalf of all defendants who are represented by the same attorney. Doing otherwise creates confusion not only for the answering party, but for the court as well. Erroneously leaving a footnote in a motion for summary judgment will not always be categorized as a "harmless oversight," but as the plaintiff's opposition points out, could result in a default judgment being entered on behalf of a seemingly unresponsive party. Given this, the court finds that in this case, defendants bring their motion on behalf of defendants Dr. Gedney and Van Horn, but caution defendants to carefully review all documents filed with the court in the future.

## 2.    Authentication of Medical Records

Plaintiff next argues that defendants' motion should be denied because it is based on unauthenticated medical records. (ECF No. 55 at 9-10.) Plaintiff does not appear to object to the authenticity of the documents, but rather their admissibility. Defendants argue that plaintiff's medical records are authenticated by Federal Rule of Evidence 901(b)(4). (ECF No. 56 at 2.)

The relevant portion of Fed. R. EVID. 901 states:

> **(a)  In General.** To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.
> **(b)  Examples.** The following are examples only – not a complete list – of evidence that satisfies the requirement:
> …
> **(4) Distinctive Characteristics and the Like**. The appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances.

Defendants also cite to cases that support their assertion that "prison records meet authentication requirements under  Fed. R. EVID. 901(b)(4) due to their characteristic appearance and contents."

1   (ECF No. 56 at 2 (citing *McMaster v. Spearman*, No. 1:10-cv-01407-AWI-SKO, 2014 WL

2   4418104, at *3 (E.D. Cal. Sept. 5, 2014)).)

3          Perhaps more helpful to the court analysis are the Ninth Circuit cases *Las Vegas Sands, LLC*

4   *v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) and *Orr v. Bank of America, NT & SA*, 285 F.3d 764,

5   776-778 (9th Cir. 2002), which found that an inquiry into authenticity concerns the genuineness of

6   evidence, not its admissibility, and documents may be authenticated by reviewing their contents to

7   see if they appear sufficiently genuine.  Here, plaintiff does not dispute the genuineness of the

8   records.  Additionally, the court is quite familiar with the way NDOC keeps its records and upon

9   inspection does not see any issues with their genuineness.  Therefore, plaintiff's bare objection to

10  the use of prison medical records for lack of proper authentication should be overruled.[2]  Fed. R.

11  Evid. 901(b)(4); *Las Vegas Sands, LLC*, 632 F.3d at 533.

12         Having addressed these initial concerns, the court now moves to plaintiff's Eighth

13  Amendment deliberate indifference claim.

14  **C.    Eighth Amendment Deliberate Indifference**

15         The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized

16  standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment

17  by state actors.  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted).  The

18  Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses

19  deliberate indifference by state officials to the medical needs of prisoners.  *Id.* at 104 (internal

20  quotation omitted).  It is thus well established that "deliberate indifference to a prisoner's serious

21  illness or injury states a cause of action under § 1983."  *Id.* at 105.

22         Courts in this Circuit employ a two-part test when analyzing deliberate indifference claims.

23  The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to

24  constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."

25  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted).  First, the

26  objective component examines whether the plaintiff has a "serious medical need," such that the

27

28  [2] The court directs defendants to submit an authenticating declaration to avoid similar objections in the future.

state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other . . . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care . . . ." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison official's "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found constitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm

1    treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that

2    Eighth Amendment liability arises.  *Jett*, 439 F.3d at 1096.

3        **1.    Analysis**

4        Plaintiff alleges that defendants Dr. Gedney and Van Horn exhibited deliberate indifference

5    to his serious medical needs by failing to properly treat his decubitus ulcer causing him to suffer

6    substantial pain.  (ECF No. 7 at 3-13.)  Defendants assert that: (1) defendants were not deliberately

7    indifferent to plaintiff's serious medical needs; and (2) plaintiff's belief that he should have

8    received IV antibiotics instead of oral antibiotics is merely a difference of opinion with the

9    treatment prescribed by NDOC doctors.  (ECF No. 52 at 7.)

10       As to the objective element of deliberate indifference, it appears to be undisputed that

11   plaintiff's decubitus ulcers constitute a serious medical need.  This is certainly evidenced by

12   plaintiff's medical records, which show he received treatment for his ulcer from August 2012

13   through February 2013.  Thus, the objective element of deliberate indifference has been satisfied.

14       As to the subjective element, plaintiff argues that defendants substantially delayed treatment

15   of his ulcer and staph infection causing plaintiff to suffer great harm.  (ECF No. 55 at 10-11.)

16   Defendants argue that the medical records prove they did not act with deliberate indifference

17   because they provided plaintiff with numerous appointments, antibiotics, outside consults, medical

18   devices, and access to surgery.  (ECF No. 52 at 7.)  Further, defendants allege that this simply boils

19   down to a disagreement about the choice of treatment, which does not amount to an Eighth

20   Amendment violation.  (*Id.*)

21       Plaintiff's medical records reveal that he was seen consistently from August 2012 through

22   February 2013 for treatment of his decubitus ulcer.  (*See* ECF No. 53 (sealed).)  However, the

23   record also raises some factual questions, specifically, when plaintiff's staph infection was first

24   discovered and when plaintiff received his medical devices.

25       Defendants argue that plaintiff first tested positive for an infection on October 9, 2012.

26   (ECF No. 52 at 4.)  However, upon close examination of medical records provided by defendants,

27   it appears this may be untrue.  A notation in plaintiff's progress notes on September 12, 2012 states,

28

"Ø signs of 2" infection… culture results obtained ⊕ staph ⊕ pseudomonas and Cipro started yest." (ECF No. 53-3 at 4.)  This notation creates a factual question as to exactly when plaintiff developed the staph infection, as defendants allege he was infection free on September 12, 2012, but it appears a culture came back positive for staph and pseudomonas on September 12, 2012. (*See* ECF No. 52 at 4.)  The issue here is whether defendants "chosen course of treatment was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to the prisoner's health."  Because there is a factual dispute as to when plaintiff developed the staph infection, there is also a factual question as to defendants' chosen course of treatment, given that he may have had the infection for a month longer than they allege.

Next, defendants argue that plaintiff received all requested medical devices and therefore it cannot be said that they failed to provide them (ECF No. 52 at 7), but plaintiff argues that the issue here is the delay in receiving the devices, which caused prolonged pain and the need for surgical intervention.  (ECF No. 55 at 9-10.)  Much of plaintiff's opposition addresses what exactly decubitus ulcers are.  (*See id.*)  According to plaintiff, while quite common in those confined to a wheelchair, decubitus ulcers are generally preventable.  (*Id.* at 8.)  Plaintiff contends that the defendants' delay in acquiring a wheelchair cushion and air mattress caused his ulcer to worsen to the point that surgical intervention was necessary.  (*Id.* at 10.)  The record shows that while plaintiff first requested a wheelchair cushion in August 2012, he did not receive it until November 2012. (ECF Nos. 53-5 (sealed), 53-6 (sealed).)  Plaintiff asserts that this delay not only caused his ulcer to deteriorate to the point of needing surgery, but that by not providing these medical devices, defendants failed to follow the accepted medical regimen for preventing such ulcers.  (ECF No. 55 at 11.)  Defendants do not address the issue of the delay in receiving the devices, just that plaintiff did in fact receive them.  (ECF No. 52 at 7.)  Thus, there is a factual dispute as to whether this delay caused plaintiff harm.

Another concern is whether waiting several months to send plaintiff for an outside medical consultation was medically acceptable under the circumstances.  While the court is certainly cognizant of the fact that prisons move more slowly than the outside world, appearing to leave a

11

serious, potentially life-threatening, staph infection without proper treatment for three months raises serious concerns.  Because defendants do no address this issue, there is a factual dispute as to whether this delay was medically unacceptable under the circumstances.

Finally, defendants argue that plaintiff is unable to prove that defendants knew of a serious medical need and disregarded the excessive risk to his health.  (*Id.*)  However, given all of the above, it is possible for a jury to find that the delay in providing plaintiff with medical devices, delay in sending plaintiff to an outside professional for further treatment, and defendants' course of treatment for plaintiff's ulcer and staph infection were chosen in conscious disregard of an excessive risk to the plaintiff's health.

Based on all of the above, the court cannot say as a matter of law that defendants were not deliberately indifferent to plaintiff's serious medical needs, which ultimately resulted in him undergoing surgery and spending nine days in the hospital.  The evidence demonstrates a dispute of fact as to whether defendants delay in providing requested medical devices and providing plaintiff with an outside medical consultation led to further injury.  Accordingly, summary judgment should be denied as to plaintiff's claim that defendants were deliberately indifferent to his serious medical need.

### IV.   CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that defendants' motion for summary judgment (ECF No. 52) be denied.

The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

1        2.    This Report and Recommendation is not an appealable order and any notice of

2    appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

3    judgment.

4                         **V.     RECOMMENDATION**

5        **IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment

6    (ECF No. 52) be **DENIED**.

7        **DATED**: November 15, 2016.

8

9                                                  **UNITED STATES MAGISTRATE JUDGE**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28